# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ERIC O. ROSA-RAMOS,**<br><br>Petitioner,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Respondent. | **Civil No. 16-3047 (ADC)**<br>**[Related to Crim. No. 15-162-7 ADC]** |

## OPINION AND ORDER

Petitioner Eric O. Rosa-Ramos ("Rosa") filed a pro-se petition, and several amendments thereto, to vacate and correct his sentence under 28 U.S.C. § 2255, in relation to Criminal Case No. 15-162. **ECF Nos. 1, 2, 6.** The government filed a response in opposition. **ECF No. 17**. Rosa filed a surreply without leave of the Court. **ECF No. 19**. For the following reasons, the Court **DENIES** the petition as subsequently amended. **ECF Nos. 1, 2, 6.** Accordingly, the related request by Rosa for an evidentiary hearing is **MOOT. ECF No. 12.**

## I. Background

The government charged Rosa in a ten-count indictment brought against sixty-one individuals, alleging a conspiracy to distribute controlled substances at several housing projects within the municipality of Manatí, Puerto Rico. **Crim. No. 15-162, ECF No. 3**. Rosa, represented by court-appointed counsel, pleaded guilty to one count charging the conspiracy to possess with intent to distribute controlled substances within a protected location, in violation of 21 U.S.C.

§§ 846, 841(a)(1). *Id*. at **ECF No. 1171**. The Court entered judgment on November 3, 2015, sentencing Rosa to the mandatory minimum sentence of 120 months imprisonment.[1] *Id*. Rosa's plea agreement included an appeal waiver clause, triggered so long as the Court sentenced him in accordance with his plea agreement. *Id*. at **ECF No. 642** at 5. The stipulated facts in the plea agreement indicate that the drug conspiracy began sometime around the year 2000, and involved the distribution of at least 280 grams of cocaine base (crack), one kilogram of heroin, five kilograms of cocaine, 100 kilograms of marijuana, and "a mixture or substance containing detectable amounts of" oxycodone (Percocet) and Alprazolam (Xanax). *Id*. at 11–12. Rosa stipulated that he was a "drug point owner," operating what was known as the "$7 marijuana point." As a drug point owner, Rosa agreed that he was "responsible for obtaining the narcotics, the processing, preparation and the packaging of the drugs to be sold at the drug point," and for "collecting the proceeds of drug sales and paying the street sellers." *Id*. at 12. The stipulated facts also describe Rosa's awareness that members of the conspiracy would carry firearms. *Id*. Last, the plea agreement indicated that Rosa stipulated to possession with intent to distribute "at least five (5) kilograms but less than 15 kilograms of cocaine." *Id*.

During a July 28, 2015 change of plea hearing, the Court confirmed Rosa's competency to plead guilty and his satisfaction with his appointed counsel. *Id*. at **ECF No. 1838** at 7–8. The Court also confirmed that Rosa had reviewed the government's discovery with his counsel prior

---

[1] District Judge José A. Fusté presided over the criminal case at issue. The case was transferred to the undersigned in May 2016, upon Judge Fusté's retirement. **Crim. No. 15-162, ECF No. 1586**.

to the hearing. *Id*. 18, 21. The Court walked Rosa through the provisions of the plea agreement, ensuring Rosa's understanding of the rights he was waiving and the import of an appeal waiver. *Id*. et seq. The Court spent some time explaining how a conspiracy charge operates to implicate the accused in all actions taken by all co-conspirators throughout the life of the conspiracy. *Id*. at 10–11, 14–15, 20–21. The Court explained that although Rosa personally dealt with marijuana, and no other drugs, the nature of the conspiracy charge renders him criminally "liable for the acts of others" that he "could have reasonably been aware of." *Id*. at 10. Rosa indicated his understanding throughout. To further clarify the import of the conspiracy charge, the Court handwrote the following notation, highlighted below in italics, upon agreement of all of the parties, "[F]or purposes of this plea agreement the defendant acknowledges that during the span of the conspiracy he possessed with intent to distribute *marijuana, and is being held accountable for* at least five (5) kilograms but less than 15 kilograms of cocaine." *Id*. at **ECF Nos. 642** at 12; **1838** at 20–21 (emphasis added).

Nonetheless, on August 6, 2015, the Court received Rosa's pro se motion to withdraw his plea, asserting that (1) he personally "never received any discovery," (2) defense counsel did not adequately explain the consequences of his plea, and (3) counsel did not timely provide him with a copy of the plea agreement to enable his meaningful review. *Id*. at **ECF No. 691**. On August 19, 2015, the Court conducted a hearing on the motion, during which Rosa explained that he felt "fooled" by his attorney into pleading guilty to cocaine distribution when his involvement was limited to marijuana. *Id*. at **ECF No. 1855** at 3–4. Rosa explained to the Court

that he did not understand his attorney's explanation as to why the plea agreement described cocaine instead of marijuana and that he felt pressured and rushed into signing it, referencing defense counsel's explanation that his alternative was to go to trial, where he could face a minimum term of twenty years imprisonment as a repeat offender. *Id*. at 4.

The Court broke down the elements of conspiracy for Rosa, reiterating his criminal liability for the acts of his co-conspirators, which included possession of firearms in furtherance of a drug crime and distribution of at least 280 grams of crack cocaine, one kilogram of heroin, five kilograms of cocaine, 100 kilograms of marijuana, and some amount of Percocet and Xanax. *Id*. at 7–9. The Court explained that the plea agreement's inclusion of a cocaine stipulation, rather than marijuana, reflects a compromise reached between his attorney and the government, explaining that if he went to trial, all of the drugs would be at issue. *Id*. at 5–10. The Court described the pros and cons of this deal, the implications it has on the sentencing guidelines, and the role of those guidelines in sentencing. *Id*. at 9–11. The Court elaborated that the repeat offender status would come into play were Rosa to lose at trial by imposing a mandatory minimum of twenty years and reminded Rosa of the government's evidence provided in discovery. *Id*. at 8–9, 11, 16. The Court opined that this was "a very good plea," and that Rosa "would be totally crazy to just reject this deal and try this case, because . . . anything is possible." *Id*. at 10, 12. The Court also described Rosa's appointed counsel as highly skilled. *Id*. at 11–12, 14–16. Rosa indicated that he was satisfied with that explanation and withdrew his pro se motion challenging his guilty plea. *Id*. at 16–17.

On November 3, 2015, the Court conducted Rosa's sentencing hearing. *Id*. at **ECF No. 1839**. Rosa and counsel both indicated on the record that they had no objections to the pre-sentence report ("PSR"). *Id*. at 3. The Court again summarized the import and rationale for the cocaine plea in light of Rosa's admitted marijuana involvement, as discussed at the prior hearing. *Id*. at 6–8. Rosa stated on the record that he had not admitted to owning a drug point, a fact critical to the "supervisory role" guideline enhancement. *Id*. at 9. The government noted that the plea agreement stipulated to Rosa's ownership of the "seven dollar marijuana" drug point. *Id*. Neither Rosa nor his counsel pressed the matter further.

During sentencing, the Court also reiterated the implication of the appeal waiver in the plea agreement. *Id*. at 14. The Court entered a sentence in accordance with the statutory minimum—120 months—which was a downward variance from the plea agreement and guideline range of 135–168 months. *Id*. at 9, 11, 13. The Court opted for this variance in light of the "adding and subtracting between the parties to reach" a baseline offense level that seemed reasonable. *Id*. at 13.

On February 8, 2016, the Court received Rosa's pro se "motion for leave to file out-of-time appeal," in which he requested an opportunity to file an appeal, noting that his defense counsel failed to timely file a notice of appeal despite his specific instruction he do so. *Id*. at **ECF No. 1500** at 1. This filing prompted defense counsel to file with the Court; Rosa's additional waiver of appeal, executed after sentencing, on November 12, 2015, indicating that he understood his appeal options and that he did not wish to file an appeal. *Id*. at **ECF Nos. 1501,**

**1501-1**. The Court denied Rosa's pro se request to file an untimely appeal in light of the post-sentencing appeal waiver that defense counsel provided and all other relevant evidence on record. *Id*. at **ECF No. 1507**.

On November 30, 2016, Rosa filed the motion to vacate currently at issue. **ECF No. 1**. Shortly thereafter, on January 25, 2017, Rosa filed a subsequent motion to vacate raising several additional arguments. **ECF No. 2**. More so; on March 27, 2017, Rosa further supplemented his motion with additional arguments, attributing the confusion in his initial two filings to "brain trauma and short term memory issues" related to a 2010 car accident. **ECF No. 6** at 1. The government considers these two subsequent filings as relating back to Rosa's timely initial filing. **ECF No. 17** at 8.

Rosa's primary argument across these three filings is that defense counsel's ineffective assistance deprived him of an appeal and induced him into signing a factually inaccurate plea agreement. He also argues that the Court through then Judge José A. Fusté; injected itself into plea negotiations during the August 6, 2015 hearing on Rosa's pro se motion to withdraw his plea. **ECF No. 1** at 12.

## II.     Legal Standard

The Court liberally construes pro se petitions, though "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Thus, the Court will deem waived any "argument that is merely mentioned in passing or is hidden behind Petitioner's primary complain[t]s as a mere afterthought." *Cruz*

*Vázquez v. United States*, 2019 WL 1055034, at *2 (D.P.R. Mar. 5, 2019) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Additionally, claims raised for the first time in a habeas petition must "show both 'cause' that excuses the procedural default and 'actual prejudice' resulting from the alleged error." *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015) (citation omitted). "One way to meet the cause requirement is to show constitutionally ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Id.*

To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland*, 466 U.S. at 687). "The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citations and internal quotation marks omitted). The prejudice requirement, meanwhile, necessitates a demonstration of "a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citation and

internal quotation marks omitted). Failure to prove either prong of an ineffective assistance claim is fatal to the claim. *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012).

Furthermore, when "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citation and internal quotation marks omitted).

### III. Analysis

#### A. Factual Basis of the Plea

Rosa argues that his counsel was ineffective for convincing him to enter a plea agreement that contained an inaccurate factual basis, essentially allowing him to plead guilty to a crime he did not commit. **ECF Nos. 1, 2, 6**. He asserts that this subjected him to a harsher sentence.[2] Specifically, he asserts that he never distributed cocaine, did not have a supervisory role, was not part of a gang, and could not reasonably foresee the conspiracy's actions that he was being held accountable for. **ECF Nos. 1** at 5, 7; **2** at 16; **6** at 2, 4. Rather, Rosa explains, he simply "traffick[ed] in marijuana for a period of less than five years" as part of "a large, complex criminal conspiracy," during which time he functioned as the "'seven dollar' marijuana dealer" at "a sales location" he rented "near building 7 of the Enrique Zorilla Housing Project," a

---

[2] He also claims that his factually inaccurate plea rendered him ineligible for safety-valve relief, focusing on the cocaine and leadership elements of his plea. **ECF No. 1** at 5. The government notes that Rosa was ineligible for safety-valve relief "not only because of his leadership role, but also because he stipulated to a two-level enhancement for firearms." **ECF No. 17** at 13 n.2.

housing project in which all of the drug points "were supplied by a single criminal gang." **ECF Nos. 6** at 2–6; **19** at 2. He indicated that "other men" "helped him sell marijuana" at his drug point, noting that he had assistance "almost every day." **ECF Nos. 6** at ; **6-1** at 3–4. He agreed that during the conspiracy other narcotics were distributed in addition to marijuana, including cocaine, and that other members of the conspiracy used firearms in furtherance of the conspiracy's objectives. He understood he could be held criminally liable for all of his co-conspirators' actions taken since the conspiracy's inception in 2000, regardless of when his involvement began. **Crim. No. 15-162, ECF Nos. 1838** at 10–12; **1855** at 7–8.

In other words, Rosa admits to the facts underlying his conviction. The sentencing Court found sufficient evidence to sustain the drug quantity stipulated in the plea agreement, and the Court explained the import and significance of this stipulation to Rosa numerous times. Rosa agreed that the Court's explanation was sufficient, prompting him to recant his pro se motion to withdraw his guilty plea. Thus, Rosa pleaded guilty to exactly the offense he admits to being involved in, with an ample and clear record to support of his competency and voluntariness and the factual underpinnings of the plea. Accordingly, counsel was not ineffective for allowing Rosa to plead guilty to a crime he admits he committed and the government's evidence supports.[3]

---

[3] Rosa's argument that counsel was also deficient for failing to inform him of alternatives to pleading or going to trial, such as entering a conditional plea or open plea, is unpersuasive. **ECF No. 2** at 14. Rosa's argument presupposes a right to a plea agreement in the first place, which he decidedly does not have. And, as the government notes, there is no evidence that it "would have offered a better plea agreement." **ECF No. 17** at 13. The government notes that the fact that it "did not change the terms of the plea agreement despite [Rosa's] insistence that he only

### B.    Brain Injury

Rosa implies in his habeas filings that he lacked competency to enter a guilty plea due to a brain injury sustained in a 2010 car accident.[4] **ECF No. 6-1** at 2–3. He asserts that defense counsel and the Court were made aware of his brain injury through the time PSR was done. Rosa elaborates that his car accident left him unable to obtain regular employment due to severe memory problems, explaining that the only job he could hold down after the accident was that of "marijuana salesperson" because he had engaged in that activity prior to the accident. *Id*.

The PSR states, in sum, that in 2010, Rosa "was expelled through the door of [a] car and went into a coma." **Crim. No. 15-162, ECF No. 852** at 31. He "suffered from a skull fracture, repeated headaches, and hemorrhage" and, "at times he forgets things." *Id*. Nonetheless, the PSR indicates that Rosa described his physical condition as "healthy and denied any history of serious health problems" and "any history of mental health problems." *Id*. at 31–32. Likewise, the PSR explains Rosa's employment history as simply "unemployed" for two years, since 2013, despite "actively searching for a job," and that he occasionally worked with a tow truck owner on an as-needed basis throughout 2013. *Id*. at 33.

---

dealt with marijuana is indicative that the government would not have agreed to the terms Rosa-Ramos now wishes he had negotiated." *Id*. The Court agrees. Rosa's claim is dependent upon pure speculation and is insufficient to satisfy the prejudice prong of *Strickland*.

[4] He also implies that the proceedings and documents in English were not accessible to him as a native Spanish speaker. **ECF Nos. 1** at 12; **2** at 17; **6-1** at 2, 5, 7. This argument appears disingenuous. Rosa was assisted by a court interpreter at the hearings and the PSR indicates that although Spanish is his primary language, he is also fluent and literate in English. **Crim. No. 15-162, ECF No. 852** at 32.

The PSR's account of Rosa's car accident, health status, and employment history does not substantiate his current contention that the accident left him mentally diminished. And, at the change of plea hearing, Rosa indicated he was competent to plead and defense counsel concurred. *Id*. at **ECF No. 1838** at 7–8. Rosa then filed a pro se motion to withdraw his guilty plea, and competently engaged directly with the Court in the hearing on that motion. *Id*. at **ECF Nos. 691, 1855**. As the government states, "at all times [Rosa] expressed himself in a clear fashion and admitted his understanding of the Court's explanations as to his decision to plead guilty and the consequences of that decision." **ECF No. 17** at 13–14. The Court agrees with the government's contention that, "[a]bsent any indication from [Rosa] regarding a mental deficiency, counsel cannot have been ineffective for failing to question his repeated assertions of understanding the nature and consequences of his guilty plea." *Id*.

### C. Appeal

Rosa argues that defense counsel failed to advise him of the consequences of not appealing and convinced him not to appeal.[5] **ECF Nos. 1** at 10; **2** at 16. Rosa's ineffective assistance claims regarding his appeal rights have no record support. **ECF Nos. 1** at 10; **2** at 16. The record shows that Rosa received an explanation of the appeal waiver in the plea agreement from the Court during two different hearings. **Crim. No. 15-162, ECF Nos. 1838** at 13; **1839** at 14. The Court confirmed with Rosa that defense counsel went over the plea agreement, appeal

---

[5] Rosa also claims that the sentencing judge incorrectly informed him that he did not have a right to appeal. **ECF No. 1** at 14-15. Rosa points to the Court's statements after imposing sentence, wherein the Court reminded Rosa that he had waived his right to appeal. **Crim. No. 15-162, ECF No. 1839** at 14–15.

waiver, and alternatives to pleading with him. *Id*. at **ECF No. 1838** at 7–8. The record also shows that after sentencing, defense counsel explained to Rosa his appeal options, irrespective of the appeal waiver's import, and that Rosa affirmatively indicated in writing that he did not wish to pursue an appeal. *Id*. at **ECF No. 1501-1.** Thus, there are no grounds for finding deficient performance or prejudice by counsel's failure to file an appeal that Rosa repeatedly waived.

**D.     The Court did not Inject Itself Into the Plea Bargaining Process.**

Last, Rosa claims that the Court impermissibly injected itself into the plea bargaining process during the August 19, 2015 hearing while discussing his pro se motion to withdraw his plea. **ECF No. 1** at 12. This argument is based on a misconception of the scope of the plea-withdrawal hearing.

A defendant may move to withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "When considering a motion to withdraw a guilty plea, a court ordinarily should begin by considering whether the plea, when entered, was voluntary, intelligent, and informed." *United States v. Ketchen*, 877 F.3d 429, 432 (1st Cir. 2017) (citation and internal quotation marks omitted). "A court may also consider the plausibility and weight of the reason given for the withdrawal, the timing of the request, whether the defendant is now colorably asserting legal innocence, and whether the original plea was pursuant to a plea agreement." *Id*. (citation and internal quotation marks omitted). *See also United States v. Pagán-Ortega*, 372 F.3d 22, 28 (1st Cir. 2004) (upholding a judge's comments during a change of plea

hearing that the plea deal was a "super break" and "good deal," noting that the comments "related to a factual and compelling comparison with the risk of conviction following trial").

Rosa indicated that he sought to withdraw his plea based on the plea's stipulated drug quantity of five to fifteen kilograms of cocaine, when his involvement was limited to marijuana. To assess whether this constituted a "fair and just" reason to withdraw his plea, the Court explained in great detail the terms of the plea, the government's burden of proof at trial, the evidence proffered in discovery, Rosa's alternatives to pleading guilty, the consequences of pleading, and Rosa's ability to have voluntarily, knowingly, and intelligently agreed to the plea. **Crim. No. 15-162, ECF No. 1855.** Upon completing this assessment, the Court asked Rosa if he still sought to withdraw his plea. Rosa indicated he did not and requested to withdraw his motion. Therefore, the Court's mandated inquiry into Rosa's concerns did not amount to improper judicial participation in the plea bargaining process.

**IV. Conclusion**

The Court **DENIES** Rosa's petition and supplemental motions amending the same. **ECF Nos. 1, 2, 6.** Rosa's related request for an evidentiary hearing is **MOOT. ECF No. 12.** The Clerk of the Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 4th day of April, 2019.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**